BLAKELEY LLP
David Mannion (Bar No. 288627)
dmannion@blakeleyllp.com
18500 Von Karman Ave, Suite 530
Irvine, California 92612
Telephone: (949) 260-0611
Fax: (949) 260-0613

Attorneys for Plaintiff
Export Development Canada

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXPORT DEVELOPMENT CANADA, <br><br> Plaintiff, <br><br> v. <br><br> E.S.E. ELECTRONICS, INC. and DAVID KAZEMI, <br><br> Defendants. | Case No. 2:16−cv−02967 BRO(RAOx) <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST E.S.E. ELECTRONICS, INC.** <br><br> Judge: Hon. Beverly Reid O'Connell <br> Hearing Date: January 30, 2017 <br> Hearing Time: 1:30 p.m. <br> Place: Courtroom 7C – 7th Floor <br><br> Discovery Cut-off: February 6, 2017 <br> Motion Deadline: February 13, 2017 <br> Non-Jury Trial Date: April 18, 2017 |

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

I. Introduction..........................................................................................................1

II. Relevant Factual Background......................................................................1

III. Argument........................................................................................................2

    A. Export is entitled to summary judgment for the price of the Goods under the controlling provisions of the U.C.C..........................2

        (i). At a Minimum, Export is Entitled to Partial Summary Judgment for the 926 Units E.S.E. Resold................................2

        (ii). Export is Also Entitled to Summary Judgment for the Price of the 193 Allegedly Defective Units.............................................3

            (a). Because E.S.E. Accepted the 193 Allegedly Defective Units, it is Required to Pay for Them.............................4

            (b). E.S.E. did Not Validly Revoke its Acceptance of the 193 Allegedly Defective Units........................................5

            (c). E.S.E. Has No Other Defenses to Payment for the 193 Allegedly Defective Units................................................7

    B. Export is entitled to Default Interest of 18% Per Annum and Attorneys' Fees under the Terms of the Invoices Issued to E.S.E.......8

        (i). E.S.E.'s November 20th Email Did Not Limit Acceptance to its Terms Under § 2207(2)(a)................................................9

        (ii). Guillemot's Invoice Terms Did Not "Materially Alter" the Contract under § 2207(2)(b)............................................10

        (iii). E.S.E. did not Object to the Interest or Attorneys' Fee Provisions Under § 2207(2)(c)................................................11

IV. Conclusion....................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Agroindustrias Vezel, S.A. de C.V. v. H.P. Schmid, Inc.*,
   15 F.3d 1082 (9th Cir. 1994) ........................................................................ 8

*Am. Aluminum Extrusions of Ohio, LLC v. Nebraska Plastics, Inc.*, 09-CV-763,
   2010 WL 2342485 (N.D. Ohio June 8, 2010) ............................................. 8

*Boyd v. Oscar Fisher Co.*,
   258 Cal. Rptr. 473 (Cal. App. 6th Dist. 1989) .......................................... 11

*C.A.I., Inc. v. Vitex Packaging Group, Inc.*,
   115 F. Supp. 3d 168 (D. Mass. 2015) .......................................................... 6

*Delhomme Industries, Inc. v. Houston Beechcraft*, Inc.,
   735 F.2d 177 (5th Cir. 1984) ........................................................................ 6

*Genesis Health Clubs, Inc. v. LED Solar & Light Co.*,
   639 Fed. Appx. 550 (10th Cir. 2016) ........................................................... 6

*In re Amica, Inc.*,
   135 B.R. 534 (Bankr. N.D. Ill. 1992) ........................................................... 5

*In re G. Paoletti, Inc.*,
   205 B.R. 251 (Bankr. N.D. Cal. 1997) ......................................................... 6

*Jonibach Mgt. Trust v. Wartburg Enterprises, Inc.*,
   136 F. Supp. 3d 792 (S.D. Tex. 2015) ......................................................... 5

*Needle v. Lasco Industries, Inc.*,
   89 Cal. Rptr. 593 (Cal. App. 2d Dist. 1970) ............................................... 2

*Oswald Machine & Equipment, Inc. v. Yip*,
   10 Cal. App. 4th 1238 (Cal. App. 1st Dist. 1992) ...................................... 2

*Propane Co. v. Petrosol Intern., Inc.*,
   818 F.2d 522 (6th Cir. 1987) ........................................................................ 3

*Rawls v. Associated Materials, LLC*, 10-CV-01272,
   2012 WL 3852875 (S.D. W. Va. Sept. 5, 2012) ......................................... 5

*Rexnord Industries, LLC v. Bigge Power Constructors*,
   947 F. Supp. 2d 951 (E.D. Wis. 2013) ................................................... 7, 8

*S.W. Concrete Products v. Gosh Constr. Corp.*,
 798 P.2d 1247 (Cal. 1990) .................................................................................. 10

*Sherwin-Williams Co. v. Mark Charcoal Co., Inc.*, 80-CV-4541,
 1985 WL 3932 (N.D. Ill. Nov. 15, 1985) ...................................................... 3, 4, 6

*White v. Holiday Kamper & Boats*, 06-CV-2362,
 2008 WL 4155663 (D.S.C. Sept. 9, 2008) ........................................................... 6

**Statutes**

Cal. Com. Code § 1103(a)(3) ..................................................................................... 2

Cal. Com. Code § 1201(b)(20) ................................................................................ 12

Cal. Com. Code § 1304 ............................................................................................ 12

Cal. Com. Code § 2207 .................................................................................. 9, 10, 11

Cal. Com. Code § 2207(2) ..................................................................................... 8, 9

Cal. Com. Code § 2207(2)(a) ............................................................................ i, 9, 10

Cal. Com. Code § 2207(2)(b) ............................................................................. i, 10

Cal. Com. Code § 2207(2)(c) ......................................................................... i, 11, 12

Cal. Com. Code § 2606(1)(c) .............................................................................. 2, 3, 5

Cal. Com. Code § 2607 .............................................................................................. 5

Cal. Com. Code § 2607(1) .................................................................................. 2, 3, 5

Cal. Com. Code § 2608 ..................................................................................... 5, 6, 7

Cal. Com. Code § 2609(1) ..................................................................................... 7, 8

Cal. Com. Code §§ 2609 and 2311 ........................................................................... 7

§ 2608(2) ................................................................................................................... 6

§§ 2709(1) and 2607(1) of the California Uniform Commercial Code ..................... 1

**Other Authorities**

1 White, Summers, & Hillman, *Uniform Commercial Code* § 7:3 ......................... 11

## I. Introduction

This is a simple collection case against a debtor that accepted goods, resold them, and refused to pay for them. Plaintiff Export Development Canada ("Export") is the assignee of non-party Guillemot Inc. ("Guillemot"). Defendant E.S.E. Electronics, Inc. ("E.S.E.") ordered goods from Guillemot and failed to pay for them. Export made an insurance payment to Guillemot for the goods under a credit insurance policy. In exchange, Guillemot assigned its claims against E.S.E. to Export. Export now seeks partial summary judgment against E.S.E. under §§ 2709(1) and 2607(1) of the California Uniform Commercial Code (the "U.C.C.").[1]

E.S.E. claims it purchased Guillemot's goods on "consignment" so it was not required to pay for them until it first resold them. But E.S.E. has admitted it resold 83% of the goods. Thus, at a minimum, Export is entitled to partial summary judgment for the price of those goods. E.S.E. claims the remaining 17% of the goods were defective. However, despite Guillemot's repeated offers to take back those goods, E.S.E. has withheld them for over a year. Thus, E.S.E. is also liable to pay for the allegedly defective goods under the controlling provisions of the U.C.C.

## II. Relevant Factual Background

Export is a non-profit Canadian crown corporation. It provides credit insurance to Canadian exporters selling goods abroad. Export insured Guillemot against non-payment for the goods it sold to E.S.E. After E.S.E. failed to pay Guillemot, Export made an insurance payment to Guillemot and Guillemot assigned its rights against E.S.E. to Export. *See*, Barona Dec., ¶ 2 and Ex. 1 to the accompanying Appendix of Evidence at p. 1, s. 1(1) (assignment agreement between Guillemot and Export.)

Guillemot delivered 2,469 units of a computer gaming device called the Thrustmaster TX Ferrari 458 Italia Edition Racing Wheel ("Thrustmaster") to E.S.E. *See*, Ex. 2, p. 1 (E.S.E.'s response to request for admission ("RFA") no. 1). The

---

[1] Unless indicated otherwise, all statutory citations are to the California U.C.C.

agreed price per unit was $202.49. *Id.* (RFA response no. 2). E.S.E. did not pay for 1119 units of the Thrustmaster. *Id.* at p. 2 (RFA response no. 5). Thus, it is liable for the principal sum of $226,586.31 (*i.e.*, 1119 units at $202.49 per unit.) E.S.E. admits it resold all the goods except 193 allegedly defective units. *See*, Ex. 3, p. 5 (E.S.E.'s interrogatory response no. 18); Ex. 4, p. 1 (RFA response no. 19). However, E.S.E. failed to pay for *any* of the 1119 units at issue. Ex. 2, p. 2 (RFA response no. 5).

### III. Argument

Export is entitled to partial summary judgment because E.S.E. accepted the goods and failed to revoke its acceptance in accordance with the U.C.C. *See*, Point A. In addition, under the terms of Guillemot's invoices Export is entitled to prejudgment interest of 18% per annum and attorneys' fees. *See*, Point B.

#### A. Export is entitled to Summary Judgment for the Price of the Goods under the Controlling Provisions of the U.C.C.

"[O]ne important purpose of the [U.C.C.] is to make uniform the law among the various jurisdictions[.]"*Oswald Machine & Equipment, Inc. v. Yip*, 10 Cal. App. 4th 1238, 1247 (Cal. App. 1st Dist. 1992). California courts "generally afford great deference to the decisions of our sister jurisdictions interpreting its provisions." *Id.*; *see also*, *Needle v. Lasco Industries, Inc.*, 89 Cal. Rptr. 593, 593 (Cal. App. 2d Dist. 1970) ("Since one of the purposes of the Commercial Code is to 'make uniform the law among the various jurisdictions'…the cited cases are compelling authority which we accept."); § 1103(a)(3). Thus, in the absence of contrary California authority, special weight should be given to the decisions cited from other states interpreting their corresponding provisions of the U.C.C.

##### (i). At a Minimum, Export is Entitled to Partial Summary Judgment for the 926 Units E.S.E. Resold.

Under the U.C.C. "[t]he buyer must pay at the contract rate for any goods accepted." § 2607(1). "Acceptance of goods occurs when the buyer…[d]oes any act inconsistent with the seller's ownership[.]" § 2606(1)(c). E.S.E. admits it resold all

1 the goods except 193 units.  Ex. 3, p. 5 (interrogatory response no. 18.)

2       By reselling the goods, E.S.E. "accepted" them under § 2606(1)(c) by doing an act inconsistent with Guillemot's ownership.  *Cf.*, *Cmmw. Propane Co. v. Petrosol Intern., Inc.*, 818 F.2d 522, 528 (6th Cir. 1987) (directing entry of summary judgment where buyer's resale of goods was "an act which is so inconsistent with the seller's ownership as to constitute acceptance[.]") (applying Ohio's equivalent of § 2606(1)(c)); *Sherwin-Williams Co. v. Mark Charcoal Co., Inc.*, 80-CV-4541, 1985 WL 3932, at *3 (N.D. Ill. Nov. 15, 1985) (granting summary judgment to creditor and observing that "resale of goods…constitutes 'an act inconsistent with the seller's ownership[.]'") (applying Illinois' equivalent of § 2606(1)(c)).  And because E.S.E. accepted the goods it resold under § 2606(1)(c), it is required to pay for them under § 2607(1).

      E.S.E. claims it bought Guillemot's goods on "consignment" so it was not required to pay Guillemot unless it first resold them.  For example, in June 2015 E.S.E.'s counsel claimed that the "deal was on consignment and ESE continues to make payments as it sells merchandise."  *See*, Ex. 5, p. 8.  But E.S.E. has admitted that by September 2015 it had resold all the goods.  *See*, Ex. 3, p. 4 (interrogatory response no. 10.)  The only goods left are the 193 allegedly defective units.  *Id.*, p. 5 (interrogatory response no. 18.)  And yet, E.S.E. admits it has not paid for *any* of the 1119 units at issue.  *See*, Ex. 2, p. 2 (RFA response no. 5.)  As such, at a minimum, Export is entitled to partial summary judgment for $187,505.74.  This is calculated by subtracting the 193 allegedly defective units from the 1119 units E.S.E. failed to pay for, and multiplying the remainder (*i.e.*, 926 units) by the agreed unit price of $202.49.  *See*, Ex. 2, p. 1, RFA response no. 2 (agreed price per unit was $202.49).

      **(ii).   Export is Also Entitled to Summary Judgment for the Price of the 193 Allegedly Defective Units.**

      E.S.E. currently only has 193 units of the Thrustmaster in its possession.  *See*, Ex. 3, p. 5 (interrogatory response no. 16).  E.S.E. admits all other units were sold and

claims these remaining units are defective. *Id.* (interrogatory response no. 18). Although E.S.E. admits it did not pay for these units,[2] it inexplicably refused Guillemot's offers to take them back, discussed below. As such, even assuming these units *are* defective, E.S.E. is still liable to pay for them under the U.C.C.

**(a). Because E.S.E. Accepted the 193 Allegedly Defective Units, it is Required to Pay for Them.**

E.S.E. admits it received the goods in November 2014. Ex. 2, p. 1 (RFA response no. 1.) Seven months later, E.S.E. informed Guillemot that 45 units were defective and requested an "RMA" (return merchandise authorization) for those units. Ex. 5, at p. 6 (email from E.S.E. to Guillemot.) Four days later, Guillemot offered E.S.E. an RMA "for all good and defective inventory." *Id.* E.S.E. never responded and Guillemot repeated the offer two weeks later. *Id.* Still, E.S.E. did not respond. Tanner Dec., ¶ 2.

On September 21, 2015, E.S.E. requested an RMA for 200 units of the Thrustmaster. *See*, Ex. 5, at p. 4 (email from E.S.E. to Guillemot.) Later that day, Guillemot *again* offered E.S.E. an RMA to return "all remaining inventory (defective and unsold)." *Id.*, pp. 3 – 4. Guillemot repeated this offer three more times on September 25, September 29, and October 22, 2015. *Id.*, p. 3. Still, E.S.E. did not reply. *See*, Tanner Dec., ¶ 3; Ex. 4, at pp. 2 – 3 (E.S.E.'s RFA response no. 23 and emails referenced in RFA response.) Instead, it kept the units.

Finally, on November 23, 2015, Guillemot wrote to E.S.E. stating that "Guillemot.…requires E.S.E.…to either: 1) pay…$226,586.1 US dollars which is the equivalent of 1,119 units…; <u>or</u> 2) send back to Guillemot Inc. the 1,119 units…that are not paid[.]" Ex. 5, at p. 2. Despite being given the option of either paying Guillemot or returning the defective units, E.S.E. did neither and still has the units today. Ex. 3, p. 5 (interrogatory response No. 16). In other words, the 193 allegedly

---

[2] *See*, Ex. 2, p. 2, RFA response no. 5 (1119 units not paid for).

defective units have been withheld by E.S.E. for over two years since they were delivered,³ and seventeen months since E.S.E. first claimed they were defective.⁴

Accordingly, even if the 193 units are defective (and there is no evidence they are), E.S.E. accepted them under § 2606(1)(c). *Cf.*, *In re Amica, Inc.*, 135 B.R. 534, 550 (Bankr. N.D. Ill. 1992) (applying California U.C.C. and observing that "[i]f a buyer claims goods are not conforming due to defects, the buyer must return the goods to the seller and cannot exercise any ownership over the goods. If a buyer exercises ownership over the goods, it has accepted the goods and must pay."); *Jonibach Mgt. Trust v. Wartburg Enterprises, Inc.*, 136 F. Supp. 3d 792, 811 (S.D. Tex. 2015) ("physical possession and exercise of dominion over the goods may constitute…an act inconsistent with the seller's ownership[.]") (applying Texas' equivalent of § 2606(1)(c)).

By keeping the 193 allegedly defective units for more than seventeen months, E.S.E. accepted them under § 2606(1)(c). As such, it must pay for them under § 2607(1).

**(b). E.S.E. did Not Validly Revoke its Acceptance of the 193 Allegedly Defective Units.**

As explained in Official Comment 2 to § 2607, "acceptance of goods precludes their subsequent rejection. Any return of the goods thereafter must be by way of revocation of acceptance, under the next section"; *i.e.*, § 2608. *Cf.*, *Rawls v. Associated Materials, LLC*, 10-CV-01272, 2012 WL 3852875, *5 (S.D. W. Va. Sept. 5, 2012) ("[R]ejection of goods occurs, if at all, before acceptance of goods, and revocation of acceptance of goods occurs, if at all after acceptance of goods.").

"Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it[.]" § 2608(2). E.S.E. knew 193

---

³ Ex. 2, p. 1, RFA response no. 1 (goods received in November 2014).
⁴ Ex. 5, p. 6 (July 2015 email from E.S.E. to Guillemot requesting RMA.)

units of the Thrustmaster were supposedly defective in September 2015. *See*, Ex. 5, p. 4 (E.S.E.'s request for RMA for 200 units.) Throughout 2015, Guillemot repeatedly offered to take back all defective units. *See*, Ex. 5 (offers to take back all defective units in May, July, September, October, and November 2015). E.S.E. elected to keep the units. Ex. 3, p. 5 (interrogatory response no. 16).

"Revocation of acceptance by a buyer under the U.C.C. 'is necessarily a recognition by the buyer that the property [as to which acceptance is revoked] belongs to the seller.'" *Delhomme Industries, Inc. v. Houston Beechcraft*, Inc., 735 F.2d 177, 181 (5th Cir. 1984) (applying Texas' equivalent of § 2608) (alterations in original.) "Consequently, a buyer's act of dominion over the goods, including the sale of the goods, is inconsistent with a claim by the buyer that acceptance has been revoked. *Id.*

By keeping the 193 units for over a year after learning of the alleged defects, E.S.E. lost any right of revocation. *In re G. Paoletti, Inc.*, 205 B.R. 251, 261 (Bankr. N.D. Cal. 1997) ("if acceptance is revoked, the buyer must return the goods to the seller."); *Genesis Health Clubs, Inc. v. LED Solar & Light Co.*, 639 Fed. Appx. 550, 556 (10th Cir. 2016) (buyer "did not effectively reject or revoke acceptance of the lights because it never relinquished dominion over them."); *White v. Holiday Kamper & Boats*, 06-CV-2362, 2008 WL 4155663, at *3 (D.S.C. Sept. 9, 2008) ("Revocation of acceptance…requires return of goods[.]") (citation omitted); *Sherwin-Williams*, 1985 WL 3932, at *4 ("a buyer may lose his right to revoke acceptance before or after its attempted revocation by the exercise of ownership over the goods.") (*citing*, 4 Anderson, Uniform Commercial Code, § 2:608–43–44 at 204 (3d Ed. 1983)).

Simply put, the U.C.C. did not authorize E.S.E. to keep the allegedly defective units, while also refusing to pay for them. *Cf.*, *C.A.I., Inc. v. Vitex Packaging Group, Inc.*, 115 F. Supp. 3d 168, 174, n. 2 (D. Mass. 2015) ("Vitex has cited no provision of the Uniform Commercial Code that both permits revocation of acceptance by a merchant-buyer…*and* permits the merchant-buyer to retain the good for ongoing future use by refusing to return it without any payment whatsoever.") As such,

Export is entitled to summary judgment for $226,586.31. This is calculated by multiplying the 1119 units E.S.E. admits it failed to pay for,[5] by the agreed price of $202.49. *See*, Ex. 2, p. 1, RFA response no. 2 (agreed price per unit was $202.49).

### (c). E.S.E. Has No Other Defenses to Payment for the 193 Allegedly Defective Units.

Apart from § 2608, the only defenses asserted in E.S.E.'s answer under the U.C.C. are §§ 2609 and 2311. *See*, dkt. no. 34, p. 11. *First*, "[s]ection 2311 provides that a delay in a party's performance is excused when that delay is caused by the other party's failure to provide required specifications or otherwise cooperate." *Rexnord Industries, LLC v. Bigge Power Constructors*, 947 F. Supp. 2d 951, 961 (E.D. Wis. 2013) (applying California U.C.C.)  As shown by Exhibit 5, Guillemot repeatedly offered to take back all defective and unsold units. E.S.E. rejected those offers and kept the 193 defective units. Thus, Guillemot cannot be blamed for E.S.E.'s failure to return the defective units, or its refusal to pay for the units it resold.

Neither does § 2609 provide E.S.E. with a defense. That statute provides that "[w]hen reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance f*or which he has not already received the agreed return*." § 2609(1) (emphasis added).

It is unclear how § 2609(1) has any application on this record. Regardless, it is not a defense because E.S.E. "already received the agreed return." *Id.*  As such, it is obligated to pay. *See e.g.*, *Am. Aluminum Extrusions of Ohio, LLC v. Nebraska Plastics, Inc*., 09-CV-763, 2010 WL 2342485, at *3 (N.D. Ohio June 8, 2010) ("NPI withheld performance despite having received the agreed return in the form of aluminum fencing and extrusion products it resold to third-parties at a profit.

---

[5] *See*, Ex. 2, p. 2, RFA response no. 5 (1119 units not paid for).

Accordingly, NPI cannot now avail itself of [Ohio's equivalent of § 2609(1)] to excuse its failure to pay.") (*citing*, *Agroindustrias Vezel, S.A. de C.V. v. H.P. Schmid, Inc.*, 15 F.3d 1082 (9th Cir. 1994)); *see also*, 1 White, Summers, & Hillman, *Uniform Commercial Code* § 7:3, fn. 6 (6th ed. 2014) ("2-609(1) only authorizes the suspension of any performance 'for which [this party] has not already received the agreed return.' It does not terminate the liability to pay for goods once in hand.").

  **B.** **Export is entitled to Default Interest of 18% Per Annum and Attorneys' Fees under the Terms of the Invoices Issued to E.S.E.**

Guillemot sent several invoices to E.S.E. for the Thrustmaster. All included identical attorneys' fee and default interest provisions at the bottom. *See*, Ex. 6. Those provisions became part of the contract under § 2207(2).

The following chart shows when E.S.E. admits it received Guillemot's invoices in the context of the transaction:

| Date | Document/Event | Attorney Fee Provision? | Interest Provision? |
|---|---|---|---|
| 11/17/14 | 200 units shipped[6] | | |
| 11/20/14 | E.S.E. email concerning consignment sale[7] | Silent | Silent |
| 11/21/14 | E.S.E. receives Guillemot's invoice[8] | Yes | Yes |
| 11/21/14 | 2,269 units shipped[9] | | |
| 11/26/14 | E.S.E. receives Guillemot's invoice[10] | Yes | Yes |
| 11/28/14 | E.S.E. starts reselling the goods[11] | | |
| 12/05/14 | E.S.E. sends purchase order to Guillemot[12] | Silent | Silent |

---

[6] Ex. 3, p. 3 (interrogatory response no. 7); Ex. 2, p. 1 (RFA response no. 1.)
[7] Ex. 7, p. 1 (email from E.S.E. to Guillemot).
[8] Ex. 3, p. 1 (interrogatory response no. 3); Ex. 6, p. 1 (invoice received by E.S.E.)
[9] Ex. 3, p. 3 (interrogatory response no. 7).
[10] Ex. 3, p. 1 (interrogatory response no. 3); Ex. 6, p. 1 (invoice received by E.S.E.)
[11] Ex. 3, p. 4 (interrogatory response no. 10).
[12] Ex. 7, p. 3 (purchase order from E.S.E.)

| | | | |
|---|---|---|---|
| 12/10/14 | E.S.E. receives Guillemot's invoice[13] | Yes | Yes |
| 02/03/15 | E.S.E. receives Guillemot's invoice[14] | Yes | Yes |

§ 2207(2) provides, in relevant part, that:

> [A]dditional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
> (a) The offer expressly limits acceptance to the terms of the offer;
> (b) They materially alter it; or
> (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

### (i).   E.S.E.'s November 20th Email Did Not Limit Acceptance to its Terms Under § 2207(2)(a).

§ 2207 "is intended to deal with" the situation "where an agreement has been reached either orally or by informal correspondence…and is followed by one or both of the parties sending formal memoranda embodying the terms so far as agreed upon and adding terms not discussed." *Id.*, Off. Cmt. 1. On November 20, 2014, E.S.E.'s C.E.O. emailed Guillemot stating:

> Jonathan,
> I just want to confirm the following as per our agreement:
> 1. my cost is $202.00 as per the email below
> 2. I will be refunded/credited the difference when you bill me for $235
> 3. Items are on consignment basis and I can return items that were not sold
> Please confirm. *See*, Ex. 7, p. 1.

The next day, Guillemot sent an invoice (that included the interest and attorneys' fee provisions)[15] and 2,269 units of the Thrustmaster to E.S.E.[16] E.S.E.'s

---

[13] Ex. 3, pp. 1-2 (interrogatory response no. 3); Ex. 6, p. 2 (invoice received by E.S.E.)
[14] Ex. 3, p. 2 (interrogatory response no. 3); Ex. 6, p. 3 (invoice received by E.S.E.)
[15] Ex. 3, p. 1 (interrogatory response no. 3); Ex. 6, p. 1 (invoice received by E.S.E.)

9
**MEMORANDUM OF POINTS AND AUTHORITIES**

email (Ex. 7, p. 1) did not "expressly limit[] acceptance to the terms of the offer[.]" § 2207(2)(a). Thus, Guillemot's invoice constituted a proposal for additional terms. *See*, § 2207, Off. Cmt. 2 ("any additional matter contained in the confirmation or in the acceptance falls within subsection (2) and must be regarded as a proposal for an added term unless the acceptance is made conditional on the acceptance of the additional or different terms.")

### (ii). Guillemot's Invoice Terms Did Not "Materially Alter" the Contract under § 2207(2)(b).

"Examples of clauses which…are to be incorporated in the contract unless notice of objection is seasonably given are…a clause providing for interest on overdue invoices… where they are within the range of trade practice[.]" *See*, § 2207, Off. Cmt. 5. Guillemot's invoices all provided for default interest of 1.5% per month. Ex. 6, pp. 1 – 3. This is within the range of trade practice. *Cf.*, *S.W. Concrete Products v. Gosh Constr. Corp.*, 798 P.2d 1247, 1252 (Cal. 1990) (affirming judgment that invoice term for late charges of 1.5% per month became part of contract under § 2207 where invoices accompanied goods.)

Assuming E.S.E. did not have to pay Guillemot until it resold the goods, E.S.E. admits it had resold all the goods by September 3, 2015. *See*, Ex. 3, p. 4 (interrogatory response no. 10). As such, Export is entitled to $226,586.31 for the goods, plus interest of 18% per annum from September 3, 2015.

Likewise, attorneys' fee provisions are additional terms that may bind a buyer if not objected to under § 2207. *Cf.*, *Boyd v. Oscar Fisher Co.*, 258 Cal. Rptr. 473, 479 (Cal. App. 6th Dist. 1989) (holding that where nothing in the parties' original agreement precluded a supplemental agreement on attorneys' fees, invoices added attorneys' fee provision under § 2207.) E.S.E. admits it received the invoices. Ex. 3, pp. 1 – 2 (interrogatory response no. 3). As such, there is no reason it should be

---

[16] Ex. 3, p. 3 (interrogatory response no. 7).

relieved of its obligation to pay Export's attorneys' fees.

### (iii). E.S.E. did not Object to the Interest or Attorneys' Fee Provisions Under § 2207(2)(c).

"If no answer is received within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to." *See*, § 2207, Off. Cmt. 6. When asked to admit it did not object to the attorneys' fee and interest provisions on Guillemot's invoices, E.S.E. stated as follows:

> The first invoice ESE received was dated 10/12/14 (ESE 004). Thereafter, Guillemot and ESE agreed that ESE would receive and sell the Goods on consignment, which acknowledged and incorporated ESE's objection to the language referenced in Request For Admission No. 24, since the agreement that ESE would sell the goods on assignment (sic.) effectively negates the language in Request For Admission No. 24[.] *See*, Ex. 8, pp. 1 – 2 (E.S.E.'s first amended interrogatory responses.)

E.S.E.'s claim that it objected to Guillemot's invoices is without merit because it misreads the invoice dates, which are in the reversed Canadian format. The invoice E.S.E. claims it objected to was actually dated December 10, 2014 – *not* October 12, 2014. This is confirmed by the due date which is written as "24/01/2015." Ex. 8, p. 4 (invoice bates numbered ESE 004). The purported consignment agreement that E.S.E. claims "negated" the invoice terms was dated November 20, 2014 – the month before the invoice bates numbered "ESE 004" was even issued. *See*, Ex. 7, p. 1 (purported consignment agreement). In truth, E.S.E. never objected to the attorneys' fee or interest provisions on Guillemot's invoices as required by § 2207(2)(c). *See*, Tanner Dec., ¶ 4. Thus, both provisions are binding on E.S.E.

## IV. Conclusion

This is a case where the denial of partial summary judgment will work irreparable harm to Export. The principal sum at stake is just $226,586.31.

Nonetheless, the case has already generated an unjustifiable amount of litigation. E.S.E. noticed five depositions for December alone (*see*, Ex. 9), including Export's attorney-of-record. *Id.*, p. 4. And apart from the expense of a trial, Export has serious concerns about E.S.E.'s ability to pay any judgment.

Under the U.C.C. "[e]very contract…imposes an obligation of good faith in its performance[.]" § 1304. "'Good faith[]'…means honesty in fact and the observance of reasonable commercial standards of fair dealing." § 1201(b)(20). It is respectfully submitted that the record shows E.S.E. did not discharge its obligations under § 1304. Moreover, one of E.S.E.'s customers did not pay it for 1,570 units of the Thrustmaster. *See*, Ex. 10, p. 1 (interrogatory response no. 12.) That customer has now dissolved. *Id.*, p. 2. Thus, rather than having a legitimate grievance it appears E.S.E.'s refusal to pay is simply an effort to pass its own losses on to Guillemot.

Regardless, whatever E.S.E.'s reasons for refusing to pay, it accepted the goods – including the allegedly defective goods – and did not validly revoke its acceptance by returning the goods to Guillemot. As such, it is obligated to pay under the controlling provisions of the U.C.C

Dated: December 12, 2016

Respectfully submitted,

BLAKELEY LLP

By: */s/ David M. Mannion*
David M. Mannion

Attorneys for Plaintiff
Export Development Canada

12
**MEMORANDUM OF POINTS AND AUTHORITIES**